## KENNEDY *v.* MEACHAM and others.

*(Circuit Court, W. D. Tennessee.   July 7, 1883.)*

1. DAMAGES—WRONGFULLY SUING OUT ATTACHMENT.
    In Tennessee the failure of the plaintiff to sustain an attachment suit conclusively entitles the defendant to his *actual* damages.

2. SAME—MEASURE OF DAMAGES—LOSS OF CREDIT.
    If the defendant in an attachment suit be a merchant, and the peculiar circumstances of the case render his credit sensitive to injury by the attachment, the jury may consider these circumstances in compensating him in damages for a wrongful attachment.   This credit does not depend wholly on solvency, as measured by excess of assets over liabilities, but likewise on the trust and confidence based on integrity of character and business capacity.

3. SAME—SPECULATIVE DAMAGES—COUNSEL FEES.
    Counsel fees are not an element of damages in such cases, though expenses of litigation not covered by costs in the attachment suit are.   But no speculative damages can be allowed, based on hopeful estimates of results, if business had not been interfered with by attachment.   The extent of the actual injury being ascertained, the jury should confine the damages to a sum that will compensate the injured party.

4. SAME—PUNITIVE DAMAGES.
    No punitive damages are recoverable where, as on the facts of this case, it appears that the plaintiff had an honest belief that the defendant in attachment owed him, and a statutory ground of attachment, because of non-residence, no matter how erroneous that belief may have been.

5. SAME—ADVICE OF COUNSEL.
    And where the plaintiff in attachment submits the facts fairly to his counsel, and is advised to bring the suit, he is protected from punitive damages by that advice, although the counsel be mistaken in his judgment.   But this protection does not, in Tennessee, extend to excuse the statutory liability for actual damages in all cases where the plaintiff in attachment fails to sustain his suit.

M. F. Kennedy was a cotton buyer who for a long time lived in Memphis.   He made an arrangement with Meacham & Co. to take his cotton for sale at 75 cents a bale, to cover all charges, and no interest to be counted against him, according to his contention.   This contract was made with the cotton salesman of the firm whose authority was disputed by the firm.   When the season was closed there was a balance of $140 due Kennedy, without interest, but counting interest there was a balance against him of $149.   Kennedy denied any liability for interest, and was corroborated by the cotton salesman, who told the firm he had made a contract with him by which he was to pay no interest.   During the next year, Kennedy having formed a partnership to do business at Fort Smith, Arkansas, was buying goods from Memphis merchants, when Meacham & Co. placed their claim in the hands of a commercial agency for collection, which was returned. They threatened to attach, and Kennedy, being notified by telegraph, came to Memphis and told the firm that he would pay the debt if the salesman with whom he made the contract would say he owed it.   He begged them not to attach, as it would injure his credit and interfere with his business arrangements.   Friends of Kennedy also went to members of the firm with letters from the salesman,

explaining that Kennedy did not owe the balance for interest, and also begged that Kennedy be not attached, as it would injure him. They did attach before Justice Galloway, after consulting their lawyer, and the case was decided in favor of Kennedy and against Meacham. Kennedy then brought suit in this court for $10,000 damages. The jury brought in a verdict for $600 damages for the plaintiff.

*H. C. Young, J. M. Harris, Taylor & Carroll,* and *Metcalf & Walker,* for plaintiff.

*Gantt & Patterson,* for defendants.

HAMMOND, J., (*charging jury.*) 1. The judgment against M. L. Meacham & Co. in the attachment suit before the justice of the peace is conclusive of the right of the plaintiff to secure the actual damages resulting to him from the wrongful suing out of the attachment. The only possible question for you, on this branch of the case, is the amount of the actual damages. That he is entitled to recover the expenditure of money for coming from his home in Arkansas to Memphis, when called here by the telegram to give atention to the attachment suit, there can be no doubt. This expenditure was not covered by costs, as it sometimes is in other states, where it is allowed as costs, and of course not recoverable as damages. But here such expenses are not included in the costs of suit, and therefore all money necessarily expended for traveling expenses and in defense of the suit, not included in the costs, are a fair proof of damages which you may award. Of course, money expended outside of and not necessarily as expenses in the suit cannot be recovered, nor can counsel fees be recovered. The plaintiff may also recover such other sum as will compensate him for any injury done to his credit, by which the law does not mean only a credit based on solvency, as shown by the relative comparison of debts and assets to meet them. A merchant who owns property in excess of his debts, who has abundant assets and small debts, may enjoy mercantile credit, and usually does, if besides he has integrity of character, business capacity, and that sense of obligation which causes him to scrupulously protect his credit by prompt payment of his debts and honest dealings in his business. The relative amount of debts and assets is undoubtedly an important element in estimating the extent or value of any merchant's credit, and cannot be overlooked by you in determining the injury that has been alleged to have been the result of the wrongful suing out of the attachment. But the law does not confine its protection in this respect to a credit based on property in hand, or available to secure that credit. It extends also to that credit wich is based on integrity and business capacity, and the trusting confidence which relies on them. Be it great or small, no one has any right to injure it without liability to pay damages that will compensate for the injury. The value of such credit, and indeed all credit, varies according to the circumstances in the case. Therefore,

proof in this case has been admitted to show fully all the circumstances surrounding the plaintiff at the time of the suing out of this attachment, in order that you may be enabled to determine what his credit was founded on, its extent and value, and the injury there has been, if any, to it by the suing out the attachment. The plaintiff is not entitled to damages based on any speculative estimate of his injury, but only to such actual loss of credit as he has sustained from the wrongful attachment, and which was the direct and natural consequence of that wrongful act. If other causes have contributed to the loss of credit, the defendants are not responsible for the loss flowing from those causes, but only so much of it as was caused by the wrongful suing out of the attachment; but for this loss, be it great or small, the plaintiff is entitled to receive such a sum of money as will compensate him for the injury. While you cannot guess at this, and can only estimate it from the proof before you, and cannot speculate about it by taking into consideration any sanguine hopes of future profits or successful enterprises, in the nature of the case, you are not required to weigh it with nice precision and figure it down to exact proportions, as you would a judgment on a contract. All you can do, and all the law requires of you, is that you shall carefully consider all the proof in this case, and nothing but the proof, lay aside all sentiment of speculation, and from the proof, with all its peculiarities and special bearing, determine the extent of the injury done the plaintiff by the wrongful attachment, and for that injury, and no other, award him such a sum of money as will compensate him for it. He is not entitled to recover for any injury done De Pass, his partner, but he cannot be denied compensation because he had a partner. It is only the injury done to Kennedy, the plaintiff, by the wrongful suing out an attachment against him individually, that is sued for here, and whatever the extent of that injury was to him you must compensate for him in damages. I shall not review the proof in this case on either side. The case has been thoroughly argued by counsel for both sides. There are no difficulties in the case requiring me to sum up the proof to enable you to apply the law as it has been given you in charge by the court. The wrong cannot be denied, and you will not hesitate to measure the damages that will compensate for the injury fairly, impartially, and without the least regard to the passions or feelings of the parties on the subject. If you find the injury slight and of no consequence, and entailing no loss on the plaintiff, your verdict will be nominal, or only for the dollars and cents actually expended because of the wrongful suit, and not included in the costs; but at all events it must be for plaintiff for that amount. If, on the other hand, you find that owing to the situation of the plaintiff, on all the facts and circumstances of this case, there were reasons why his credit—if you find he had credit to be injured—was peculiarly sensitive to injury by this wrongful attachment, and the publicity given to it through the commercial agency or

otherwise, and you find that these facts and this situation were known to the defendants, no matter how honestly they believed they were right, you will not hesitate to consider these facts, with the others in proof on both sides, in estimating the injury, and award such a sum in damages as will compensate the plaintiff for the injury, and no more. The amount is within your control, to be assessed, on all the facts and circumstances, according to your impartial judgment. I do not, for one moment, doubt that you will exercise this judgment reasonably, wisely, justly, and impartially.

2. Juries may sometimes, where there is wanton disregard of the rights of others and a spirit of mischief actuated by malicious motives, or flowing from a reckless and inconsiderate disregard of consequences to the rights of others, punish a defendant for the wrongful abuse of process, if he had no probable cause of action. But I have, after a most mature deliberation upon all the facts and circumstances of this case, concluded that it is my duty to assume the responsibility properly belonging to the court, and say to you that this is not a case for the application of that principle. There is no proof authorizing you to punish the defendants in this case by giving exemplary or punitive damages, and, as I understand the undisputed facts of the case, the court should not be content with any verdict in which the idea of punishment entered as an element of calculation. The plaintiff is entitled to a sum that will fully compensate him for the injury, under the instructions already given, but no more, on the facts of this case. I would like to take time, by a review of the facts, to justify this judgment, but it is not necessary and time presses us. It is sufficient to say that Kennedy was a non-resident, and the right to proceed by attachment was clear if Meacham & Co. had a reasonable ground to believe and did honestly believe that Kennedy was in their debt for a balance due by account, whether for interest or what not. The judgment of the court where the attachment was sued is conclusive that they had no debt against Kennedy; but this is not the question. They indisputably claimed to have a debt. There were transactions out of which such a claim might arise, however unfounded in law or in fact it may appear to be, and has been by a competent court decided to be. It is not a question whether Kennedy owed Meacham & Co. in law and in fact, but did they honestly believe so, under facts and circumstances that were reasonably to be relied on as a basis of that belief? I do not think that any proof in this case, when impassionately considered, tends to show that the defendants did not entertain such a belief, or that they might not on the facts as they understood them—not as we might or as the justice of the peace has understood them—reasonably claim that Kennedy owed them. They were unfortunate in that belief; they acted inconsiderately, and it would be better in cases of such doubtful claims to proceed in the regular way, than by an attachment which may injure the debtor needlessly; but this is not the question. They had a

right to proceed as they did, no matter from what motive, if they had a claim reasonably affording a probable cause of action; provided, however, that if they failed to establish that claim they must compensate the debtor for all injury he sustains from the attachment. They cannot escape that statutory liability by honest belief or probable cause, and must bear the consequences; moreover, they consulted competent counsel, and so far as I can see withheld no material fact then known to them to be material or important, nor did they misrepresent any fact to him. He advised the attachment, and that in such a case protects them from punitive damages. It is of no consequence counsel made a mistake. It is only when the courts have decided that counsel did make a mistake that the client needs the benefit of this doctrine. If counsel advise correctly there is no occasion to rely on the principle. Hence we do not try the correctness of the advice of counsel. If he lays all the facts before the counsel the protection is complete. But this cannot protect them from liability for damages that will compensate the plaintiff for the wrongful attachment, and that it was wrongful there can no longer be any doubt. The judgment of the justice of the peace is conclusive of that. You will therefore, gentleman of the jury, not proceed upon any idea of punishing the defendants, but will proceed to award such compensatory damages as in your judgment, on the proof, the plaintiff is entitled to receive under the instructions already given you.

---

The rulings in this case were based on *Jerman* v. *Stewart*, 12 FED. REP. 266, which case was approved by the supreme court of Tennessee in *Renkert* v. *Elliott*, (not yet reported,) April term, Jackson, 1883. H.